Stephen H.M. Bloch (#7813)
Laura Peterson (#16135)
Hanna Larsen (#18458)
SOUTHERN UTAH WILDERNESS ALLIANCE
425 East 100 South
Salt Lake City, Utah 84111
Telephone: (801) 486-3161
steve@suwa.org
laura@suwa.org
hanna@suwa.org

*Attorneys for Proposed Defendant-Intervenor*
*Southern Utah Wilderness Alliance*

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION, SOUTHERN REGION

| | |
|---|---|
| **STATE OF UTAH** *et al.*, <br><br>   Plaintiffs, <br><br> v. <br><br> **DOUG BURGUM**, *et al.*, <br><br>   Defendants, <br><br> and <br><br> **SOUTHERN UTAH WILDERNESS ALLIANCE**, <br><br>   Proposed Defendant-Intervenor. | Case No. 4:25-cv-00106-AMA-PK <br><br> **UNOPPOSED MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT** <br><br> Judge Ann Marie McIff Allen <br> Magistrate Judge Paul Kohler |

The Southern Utah Wilderness Alliance (SUWA) respectfully moves this Court for an Order granting SUWA intervention as of right in this matter. A memorandum in support of SUWA's motion is included herein. Counsel for Plaintiffs State of Utah *et al.* have informed

SUWA's counsel that Plaintiffs do not oppose this motion. Counsel for Defendants Doug Burgum *et al.* have informed SUWA's counsel that the Federal Defendants take no position on this motion. As explained below, SUWA easily meets the Tenth Circuit's four-part test for intervention as of right and thus its motion should be granted.

## BACKGROUND

Plaintiffs State of Utah, the Utah School and Institutional Trust Lands Administration (SITLA), Emery County, Utah, and Sevier County, Utah (collectively, "Plaintiffs") have sought judicial review of the Bureau of Land Management's (BLM) December 31, 2024 Decision Record for the San Rafael Swell Travel Management Plan (TMP).[1] This plan designated 1,496 miles of dirt roads and trails for motorized use and closed 665 miles to such use.[2]

### I. The San Rafael Swell

The San Rafael Swell Travel Management Area (TMA) encompasses over 1.1 million acres of BLM-managed lands in southeastern Utah and within the agency's Price and Richfield Field Offices.[3] The majority of the San Rafael Swell TMA is located in Emery County west of the Green River and east of the Fishlake and Manti-La Sal National Forests.[4] The San Rafael Swell is a spectacular and beloved Utah landscape that is home to desert bighorn sheep, pronghorn, and Endangered Species Act-listed threatened and endangered species such as the

---

[1] *See generally* Bureau of Land Mgmt., *Decision Record: San Rafael Swell Travel Management Plan*, DOI-BLM-UT-G020-2019-0019-EA (Dec. 2024) (Decision Record). The documents supporting BLM's decision, including the Decision Record, Environmental Assessment, Finding of No Significant Impact, and individual route reports are available on BLM's ePlanning website.
[2] *Id.* at DR-2.
[3] Bureau of Land Mgmt., *Environmental Assessment: San Rafael Swell Travel Management Plan*, DOI-BLM-UT-G020-2019-0019-EA, 4-5 (Dec. 2024) (EA).
[4] *Id.* at 4.

Mexican Spotted Owl, southwestern willow flycatcher and yellow-billed cuckoo.[5] Fragile biological soil crusts, which are easily harmed or destroyed when disturbed, occur throughout the TMA.[6] The area also contains several streams and important riparian areas.[7]

The San Rafael Swell TMA is an incredibly culturally rich area and encompasses significant cultural sites reflecting thousands of years of human history, including rock imagery panels, ceramics, stone tools, rock shelters as well as historic cabins, camps, and mining sites.[8]

The San Rafael Swell's narrow canyons, soaring redrock cliffs and expansive mesas are popular with recreationists. The area draws hikers, backpackers, climbers, canyoneers and mountain bikers from around the country.[9] The area is also popular with motorized recreationists.[10] The TMA encompasses several recently Congressionally-designated Wilderness areas and the San Rafael Swell Recreation Area.[11]

## II.    Prior Travel Planning in the Price and Richfield Field Offices

Prior to BLM's decision at issue in this matter, off-highway vehicle (OHV) use in the San Rafael Swell TMA was governed by BLM's 2008 Resource Management Plans for the Price and Richfield Field Offices.[12] Those plans and their step-down travel management plans designated a total of 5,015 miles of routes for motorized use within the field offices (1,276 miles in the Price

---

[5] *Id.* at 130-33, 179-81.
[6] *Id.* at 92-96.
[7] *Id.* at 110-28.
[8] *Id.* at 36-40.
[9] *Id.* at 205-243.
[10] *Id.*
[11] *Id.* at 2
[12] Bureau of Land Mgmt., *Price Field Office Record of Decision and Approved Resource Management Plan*, 113-14 (Oct. 2008) (Price RMP);  Bureau of Land Mgmt., *Richfield Field Office Record of Decision and Approved Resource Management Plan*, 122-27 (Oct. 2008) (Richfield RMP); *see also* EA at 5-11.

Field Office and 3,739 miles in the Richfield Field Office), including 1,429 miles within the San Rafael Swell TMA.[13] SUWA and other conservation organizations challenged the Price and Richfield RMPs and travel management plans as having violated federal environmental and historic preservation laws. After nearly a decade of litigation, SUWA, the United States Department of the Interior, and others reached a settlement agreement which directed that BLM would prepare eleven new travel management plans from 2017-2024, including the San Rafael Swell TMP at issue in this case.[14]

### III.   San Rafael Swell Travel Planning

BLM initiated a 30-day scoping period for the San Rafael Swell TMP in February 2021.[15] SUWA submitted substantial comments during the scoping process, highlighting route-specific issues, proposing alternatives to consider, and identifying issues BLM was required to consider in travel planning.[16] Among other things, SUWA urged BLM to address damage caused by motorized vehicles to wildlife, riparian areas and cultural resources and to minimize the conflicts between motorized and non-motorized users.

In February 2024, BLM released various documents related to the San Rafael Swell TMP process, including a scoping report, baseline monitoring report, route reports, and preliminary

---

[13] Price RMP at 114; Richfield RMP at 126; Decision Record at DR-3.
[14] S*ee generally* S. Utah Wilderness All. v. Burke, 908 F.3d 630 (10th Cir. 2018). Although the State of Utah and SITLA were defendant-intervenors in that litigation, they were not parties to the settlement agreement.
[15] EA at 16.
[16] Decl. of Ray Bloxham ¶ 10 (attached as Ex. 1); *see generally* S. Utah Wilderness All. & The Wilderness Soc'y, *San Rafael Swell Travel Management Plan, DOI-BLM-UT-G-020-2019-EA Scoping Comments* (March 3, 2021) (Scoping Comments) (attached as Ex. 2).

alternatives.[17] SUWA submitted comments on these documents, including route-specific comments, geographic information system (GIS) data, and photo documentation of route conditions.[18] In June 2024, BLM released a draft Environmental Assessment (EA) for the San Rafael Swell TMP for a 45-day comment period.[19] During that time, BLM held two in-person open houses in Emery County to solicit public comment and feedback on the EA, as well as an online session which covered the same materials.[20] SUWA attended those meetings and later submitted extensive comments, highlighting BLM's legal obligation to comply with federal laws and regulations, including the minimization criteria set forth in 43 C.F.R. § 8342.1, the National Environmental Policy Act, and the National Historic Preservation Act.[21] SUWA also provided extensive route-specific comments, maps and photographic documentation supporting its comments.[22]

## IV.  Final EA and San Rafael Swell TMP

On December 31, 2024, BLM released its final EA, Decision Record and Finding of No Significant Impact (FONSI) for the San Rafael Swell TMP.[23] The final EA analyzed five

---

[17] *San Rafael Swell Travel Management Plan*, BLM National NEPA Register (Feb. 22, 2024) (scroll down to "Preliminary Documents and Alternatives").

[18] Bloxham Decl. ¶ 10; *see generally* S. Utah Wilderness All., *San Rafael Swell Travel Management Plan, DOI-BLM-UT-G020-2019-0019-EA Preliminary Alternatives Comments* (March 22, 2024) (Preliminary Alternatives Comments) (attached as Ex. 3).

[19] EA at 141.

[20] *Id.*

[21] Bloxham Decl. ¶ 10; *see generally* S. Utah Wilderness All. & Sierra Club, *San Rafael Swell Travel Management Plan Draft Environmental Assessment, DOI-BLM-UT-G020-2019-0019-EA* (July 22, 2024) (Draft EA Comments) (attached as Ex. 4).

[22] Bloxham Decl. ¶ 10; *see generally* Draft EA Comments.

[23] *See generally* Decision Record; EA; Bureau of Land Mgmt., *Finding of No Significant Impact: San Rafael Swell Travel Management Plan*, DOI-BLM-UT-G020-2019-0019-EA (Dec. 31, 2024) (FONSI).

alternative route networks: the No Action Alternative and four action alternatives that would designate between 1,191 and 2,110 miles for public motorized use.[24]

The final EA outlines the varying impacts of the alternative travel networks as well as the potential for each travel network to comply with the minimization criteria. Accompanying the EA, BLM also released route-specific reports that discussed each route individually, including potential impacts from OHV use on the individual routes as well as how designating each route would minimize damage in compliance with 43 C.F.R. § 8342.1.[25]

In the Decision Record, BLM selected Alternative E, which drew from several alternatives analyzed in the draft EA.[26] The new travel plan designates 1,496 miles for public OHV use and closes 665 miles to public OHV use.[27] This amounted to a net increase of 67 miles of dirt roads and trails available for motorized use in the TMA.

As the Decision Record explained, "although the decision includes more miles for OHV use than were designated by the 2008 RMPs' TMPs, the BLM believes it will strike a balance between known recreation demands while still minimizing user and resource conflicts."[28] BLM provided a rationale for each of the routes it designated as OHV-Open, OHV-Limited or OHV-Closed in the selected travel network.[29]

---

[24] EA at 24.
[25] *See generally* Bureau of Land Mgmt., *Final Route Reports*, DOI-BLM-UT-G020-2019-0019-EA. (the "Final Route Reports" section is a series of nine documents).
[26] Decision Record at DR-1.
[27] *Id.*
[28] Decision Record at DR-5.
[29] *See generally id.* att. 2.

V.      **The Southern Utah Wilderness Alliance**

SUWA is a nonprofit organization dedicated to the preservation of outstanding wilderness-quality and other sensitive public lands across Utah and the management of these lands in their natural state for the benefit of all Americans.[30] SUWA has approximately 12,000 members, many of whom reside in Utah.[31] SUWA members and staff frequently visit and recreate on the lands within the San Rafael Swell.[32] SUWA has long advocated for the protection of lands within the TMA, including preventing damage from rampant OHV use.[33] SUWA challenged the 2008 Price and Richfield RMPs and associated travel plans that blanketed the San Rafael Swell area with designated OHV routes.[34] SUWA also submitted comments at every stage of the public planning process leading up to the final travel plan.[35]

Although the 665 miles of closed routes protect some sensitive resources in the TMA from OHV damage, much of the TMA remains vulnerable. As noted *supra*, BLM's final plan <u>increased</u> the miles of dirt roads and trails in the TMA to motorized use when compared to the 2008 Price and Richfield RMPs and travel plans. Because SUWA members and staff are keenly interested in seeing this area conserved, it is within SUWA members' and staff's interests to defend certain aspects of the TMP while continuing to advocate for greater protections.[36]

---

[30] Bloxham Decl. ¶ 4.
[31] *Id.*
[32] *Id.* ¶ 7, 12.
[33] *Id.* ¶¶ 6, 9-10.
[34] *Id.* ¶ 9.
[35] *Id.* ¶ 10; *see generally* Scoping Comments; Preliminary Alternatives Comments, Draft EA Comments.
[36] Bloxham Decl. ¶¶ 8, 13-17.

## ARGUMENT

**SUWA is Entitled to Intervene as of Right**

Under Federal Rule of Civil Procedure 24(a)(2), "the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[37] The Tenth Circuit follows "a somewhat liberal line in allowing intervention."[38] "Federal courts should allow intervention where no one would be hurt and greater justice could be attained."[39] Moreover, when litigation raises an issue of significant public interest, "the requirements for intervention may be relaxed."[40] SUWA easily meets the test for intervention as of right under Rule 24(a)(2).

**I.      SUWA's Motion to Intervene is Timely.**

This Court must determine timeliness in light of all the circumstances, "including the length of time since the applicant knew of his interest in the case, prejudice to the parties, prejudice to the applicant, and the existence of any unusual circumstances."[41]

SUWA's motion is timely within the meaning of Rule 24. Plaintiffs filed their complaint initiating this action on September 8, 2025. Counsel for the Federal Defendants have entered an

---

[37] Fed. R. Civ. P. 24(a)(2).
[38] Nat'l Farm Lines v. Interstate Com. Comm'n, 564 F.2d 381, 384 (10th Cir. 1977); *see also* W. Energy All. v. Zinke (Zinke), 877 F.3d 1157, 1164 (10th Cir. 2017).
[39] Utah Ass'n of Cnty's v. Clinton (UAC), 255 F.3d 1246, 1250 (10th Cir. 2001) (internal quotation marks omitted).
[40] San Juan Cnty v. United States, 503 F.3d 1163, 1201 (10th Cir. 2007) (en banc).
[41] *UAC*, 255 F.3d at 1250.

appearance but have not yet filed a responsive pleading. Because this litigation is at an early stage, SUWA's intervention will not prejudice any party.[42]

## II. SUWA Has a Legally Protectable Interest in Preventing Motorized Vehicle Damage Within the San Rafael Swell TMA.

A prospective intervenor's environmental concern—demonstrated through a record of involvement in protecting that environmental concern—is a legally protectable interest sufficient to support intervention as of right under Rule 24(a)(2).[43] SUWA has "an interest relating to the property or transaction that is the subject of the action"—the public lands and resources that make up the San Rafael Swell TMA.

SUWA and its members have a significant interest in the lands encompassed by the San Rafael Swell TMA, many of which are proposed for wilderness designation in America's Red Rock Wilderness Act and contain significant cultural and biological resources.[44] SUWA has worked for decades to protect these particular public lands from OHV-caused impacts and damage.[45] This includes, but is not limited to, participating in BLM's travel planning process for the San Rafael Swell TMP, defending earlier BLM travel management decisions in this area, and advocating for the passage of the John D. Dingell, Jr. Conservation, Management and Recreation

---

[42] *Id.* at 1250-51.
[43] *See Zinke*, 877 F.3d at 1165-66 (holding that conservation groups with a "record of advocacy" and "a demonstrated concern for the damage to public lands caused by oil and gas developments" had a legally protectable interest that may be impaired by the litigation).
[44] Bloxham Decl. ¶¶ 7-8, 11-12
[45] *Id.* ¶¶ 9-10, 15.

Act, which designated certain lands within the TMA as Wilderness.[46] SUWA members also frequently visit these lands for recreation, sightseeing, and cultural and aesthetic appreciation.[47]

### III. SUWA's Interests May be Impaired by a Decision Setting Aside or Enjoining the San Rafael Swell TMP.

SUWA easily satisfies Rule 24(a)(2)'s impairment prong, which requires a showing that the litigation "may as a practical matter impair or impede the movant's interest."[48] This is a "minimal burden" and requires the movants to show "only that impairment . . . is possible if intervention is denied."[49]

Here, SUWA's interests may be impaired if the Court reverses, vacates, sets aside, or modifies BLM's San Rafael Swell TMP and/or Decision Record. Specifically, the San Rafael Swell TMP and Decision Record minimizes the threat of OHV-caused damage to natural and cultural resources found within the planning area by not designating for motorized vehicle use 665 miles of routes, many of which are illegally-created user trails and other claimed lines on a map that do not exist on the ground. These include routes that are reclaiming, routes that are located in BLM-identified lands with wilderness characteristics, routes that are located in riparian areas, and routes that imperil irreplaceable prehistoric and historic resources.[50]

---

[46] *Id.* ¶¶ 6, 9; *see Williams v. Bankert*, 2007 U.S. Dist. LEXIS 77503 (D. Utah) (Oct. 18, 2007) (SUWA intervened on behalf of BLM to defend the 2003 San Rafael Route Designation Plan which covered part of the BLM's current San Rafael Swell TMA).
[47] *Id.* ¶¶ 7, 12.
[48] Fed. R. Civ. P. 24(a)(2).
[49] *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010)); *see also Zinke*, 877 F.3d at 1167 (noting that test regarding potential impairment of interest "is met in environmental cases where the district court's decision would require the federal agency to engage in an additional round of administrative planning and decision-making that itself might harm the movants' interests, even if they could participate in the subsequent decision-making.").
[50] *See* Bloxham Decl. ¶¶ 8, 13; *see generally* DR Att. 2.

A decision by the Court to vacate, enjoin, set aside, or modify the San Rafael Swell TMP would revive the threat of adverse OHV impacts on these 665 miles of trails, if not more, thereby diminishing the remote and scenic nature of the Swell and harming SUWA's and its members' interests in the area.[51] The risk of that outcome is all SUWA needs to demonstrate in order to meet the impairment prong of the intervention test.[52]

### IV.     The United States May Not Adequately Represent SUWA's Interests.

As the Tenth Circuit has repeatedly recognized, the adequacy prong is a low bar which is satisfied where the government's broad obligation to represent the public interest "may conflict" with the intervenors' "particular interest[s]"—even if they share the same ultimate litigation objective.[53] And, "'[i]f the [BLM] and the intervenors would only be aligned if the [] court ruled in a particular way, then a possibility of inadequate representation exists.'"[54]

As in *Zinke* and *UAC*, here the United States may not adequately represent SUWA's unique and long-standing interests in protecting the San Rafael Swell and its natural resources from motorized vehicle impacts and damage. Unlike the BLM, which is required by law to balance competing uses of the public lands across the nation, SUWA is particularly focused on the conservation and protection of wilderness-caliber lands in Utah.[55] Indeed, SUWA is frequently at odds with BLM, both in terms of the agency's approach to motorized travel

---

[51] *Id.* ¶ 16.
[52] *See Zinke*, 877 F.3d at 1167.
[53] *UAC*, 255 F.3d at 1255–56 (emphasis added); *Zinke*, 877 F.3d at 1168. *See also* Kane Cnty. v. United States, 928 F.3d 877, 895-96 (10th Cir. 2019) (finding inadequate representation where government's "broad-ranging" interests were not identical to intervenor's narrower interests).
[54] *Zinke*, 870 F.3d at 1168 (quoting N.M. Off-Highway Vehicle All. v. U.S. Forest Serv., 540 Fed. App'x. 877, 881–82 (10th Cir. 2013)).
[55] Bloxham Decl. ¶ 4.

management planning–after all it was SUWA-led litigation that required BLM to prepare a new TMP for this area in the first place–as well as in terms of which lands should be protected from motorized vehicle use.[56] The fact that SUWA seeks to intervene to defend against Plaintiffs' challenges to this particular decision does not diminish the potential conflict, which is all SUWA needs to demonstrate to establish the potential for inadequate representation.

## CONCLUSION

For the reasons stated above, SUWA respectfully requests the Court grant its motion to intervene as of right. A proposed response to Plaintiffs' complaint is attached as Ex. 5.

Respectfully submitted September 23, 2025.

/s/ Hanna Larsen
Stephen Bloch
Laura Peterson
Hanna Larsen

*Attorneys for Proposed Defendant-Intervenor
Southern Utah Wilderness Alliance*

---

[56] *Id.* ¶ 9.

## CERTIFICATE OF COMPLIANCE

In accordance with DUCivR 7-1(a)(4)(D), I hereby certify that proposed Defendant-Intervenor Southern Utah Wilderness Alliance's Motion to Intervene and Memorandum in Support contains a total of 2,953 words.

                                                             */s/Hanna Larsen*
                                                             Hanna Larsen